# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### June 17, 2008 Session

## STATE OF TENNESSEE v. BRYAN DALE FARMER

**Direct Appeal from the Circuit Court for Montgomery County**
**No. 40601088    John H. Gasaway, III, Judge**

_____

### No. M2007-01553-CCA-R3-CD - Filed August 18, 2008

_____

A Montgomery County jury convicted the Defendant, Bryan Dale Farmer, of one count of sexual battery by an authority figure, and the trial court sentenced him to three years in prison, suspended after the service of sixty days. On appeal, the Defendant contends that: (1) the evidence is insufficient to sustain his conviction because he did not use his supervisory power over the victim to accomplish a sexual act; and (2) the trial court erred by not granting him full probation. After a thorough review of the applicable record and law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Michael J. Flanagan, Nashville, Tennessee, for the Appellant, Bryan Dale Farmer.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Preston Shipp, Assistant Attorney General; John W. Carney, District Attorney General; and John Finklea, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### I. Facts

A Montgomery County Grand Jury indicted the Defendant on four counts of statutory rape and fourteen counts of sexual battery by an authority figure. At the Defendant's trial, the following evidence was presented: S.E.[1] testified that she went to Clarksville Northeast High

---

[1] For the privacy of the child victim, we will refer to her by her initials.

School for four years, where the Defendant was a teacher, and she graduated in 2005. S.E. was born on September 14, 1987, and, at the time of her graduation, she was seventeen years old. During S.E.'s sophomore year of high school, she met the Defendant at the McDonald's where the cheerleading squad and basketball team congregated after a particular basketball game. S.E. could not recall whether the Defendant was a teacher or a coach at that time, but she was certain that he was both during her junior year of high school.

S.E. described her relationship with the Defendant as "flirtatious" at first, saying that the two would "high-five" each other or hug in the hallway before she went to class. S.E. said that this attention flattered her, and she had a crush on the Defendant. As their relationship progressed, the Defendant would sometimes "smack [her] on [her] bottom or run his hand across [her] chest" when they saw each other between classes, which was up to five times a day. Additionally, the two talked to each other on the phone, exchanged text messages and email, and sent instant messages to each other. S.E. estimated that the two exchanged text messages ten to fifteen times a day, and she recalled that she was fifteen and sixteen years old at the time of these events. S.E. did not turn eighteen until September 2005, which was after she graduated from high school.

S.E. said that, at one point, she told the Defendant that she was no longer interested in him. He called her and asked her what was wrong and what he could do to make her like him again. Ultimately, S.E. continued to speak with the Defendant.

S.E. testified that, from January 1, 2004, to January 1, 2005, she and the Defendant would hug every day at school, text message each other, and instant message each other. The Defendant sometimes touched her bottom and breasts when they hugged at school. During this time, S.E. helped the Defendant grade papers for his health class. When helping the Defendant, S.E. would go to his office and sit at his desk or on the couch in his office. The Defendant was not present when she graded papers, and she would deliver the graded papers to him in the gymnasium.

S.E. recalled an occasion in early 2005 when the Defendant called her into his office. S.E. went to the Defendant's desk, and the Defendant leaned over and kissed her. S.E. said that, in February or March of 2005, she was in the Defendant's office sitting on his couch grading papers. The Defendant proceeded to sit next to her on the couch, and the two talked and flirted. S.E. said that the Defendant kept tickling her, which progressed into him kissing her, and then the two had sexual intercourse. After having intercourse, S.E. got up, dressed, and hurried back to class.

S.E. recalled three other incidents when, after basketball games, she followed the Defendant in her car to a secluded road behind the school. The two got out of their respective cars and began kissing. During the first two encounters, the Defendant placed S.E. on the hood of her car and performed oral sex on her. During the third encounter, the Defendant placed S.E. on the hood of her car and performed oral sex on her and also digitally penetrated her.

S.E. said that she and the Defendant discussed that she was not yet eighteen, and the Defendant told her that they could date once she turned eighteen. The Defendant told S.E. that she must keep everything that happened between them a secret because they both could get into "big" trouble. The Defendant would sometimes block his telephone number from appearing on her caller ID when he called her. He said the purpose of this was to keep people from finding out about their relatioship.

On cross-examination, S.E. acknowledged that she did not recall the exact date she had intercourse with the Defendant. S.E. also acknowledged that she had filed a civil lawsuit against the Defendant and the Montgomery County School District seeking monetary damages. S.E. admitted that she did not tell the whole truth in her first statement to police, omitting the information pertaining to sexual intercourse, oral sex, and digital penetration. She admitted that she was asked by police about any previous sexual contact she had with the Defendant, and she did not tell them any of these facts, which was untruthful. She only told the police about the Defendant brushing her breasts and bottom. S.E. stated that in her second statement to the police, she again omitted all references about digital penetration, oral sex, and sexual intercourse between her and the Defendant, and only reported the Defendant's touching of her breasts. S.E. testified that she filed her federal lawsuit against the Defendant the day after she gave her second statement to the police.

S.E. agreed that the Defendant was never her teacher and that he never threatened her if she did not engage in sexual activities with him. She said that she had the opportunity to disclose what happened between them, but she did not.

On redirect examination, S.E. testified that she did not seek out the police to complain about the Defendant; rather, they came to her and asked her questions about him. She said that the police detectives scared her, and she did not want to tell them the truth. S.E. said she told the Advocacy Center the whole truth when she met with them, which roughly coincided with when she gave her second statement to police. S.E. testified that she was not truthful with police because she was scared of getting into trouble, in part because the Defendant told her that if anyone found out about them they would be in trouble. S.E. further testified that the Defendant used a school intercommunication to request that she be called out of class to come see him. S.E. said that she did not go. The Defendant later told her that he just wanted to talk to her. S.E. also said that the Defendant purchased for her a red teddy bear that he gave to her while the two were in his office.

Carissa Ball testified that she and S.E. went to the same high school when Ball was a freshman and S.E. was a junior. Ball knew S.E. because S.E. was on the cheerleading squad with Ball's sister. She also knew the Defendant because he was her physical education instructor. Ball testified that she saw S.E. and the Defendant together in the gym, in the hallways by the gym, in his office, and at a desk in the gym. Sometimes other people were around, and sometimes the two were alone together. Ball said that, when the two were at the desk in the gym together, she tried to visit S.E., and the Defendant told her to leave. Ball testified she saw S.E. and the Defendant together almost every day.

Teresa Bryden, an officer with the Clarksville Police Department, testified that she gathered the Defendant's phone records during the investigation. The parties stipulated the documents showed calls made from the Defendant's phone to S.E.'s phone.

Leslie Diaz testified that she and S.E. were classmates and that she knew the Defendant as a coach and teacher at school. She said that she saw the Defendant and S.E. talking and hugging in the hallways between classes. On cross-examination, Diaz agreed it was not unusual for a teacher to interact with students during the school day.

Lauren Drennan testified that she and S.E. attended the same school when Drennan was a freshman and S.E. was a junior. She said that she and S.E. were only acquaintances and that she knew the Defendant because he was her physical education instructor. Drennan testified that she saw the Defendant and S.E. talking together at the Defendant's desk in the gym. Drennan said that she went to the desk to ask the Defendant a question, and she felt unwelcome. The Defendant told her to "go away" because he was talking. On cross-examination, Drennan testified that she had previously recalled a lot of girls "hanging around" the Defendant's desk.

Elaine Hoffert testified that she was a teacher and the cheerleading sponsor at S.E.'s high school. Hoffert knew both S.E. and the Defendant, and she saw them on one occasion talking closely at the end of the bleachers. Hoffert said this concerned her. She also noticed both S.E. and the Defendant on their respective cell phones during a basketball game. The two made eye contact often while having their respective conversations.

Gabriel Segovia, a resource officer at S.E.'s high school, testified that he knew S.E. because she was a very popular cheerleader who had dated one of his student aides. Segovia saw S.E. with the Defendant standing and talking "one on one" while other students passed by. Segovia testified that there was a time that S.E. was no longer allowed to go to the gym.

Erika Scott testified that three of her children attended the same high school as S.E. She recalled one time when she was picking her children up from school, and she saw the Defendant with a girl that she knew was a cheerleader. The girl was leaning against the school building and the Defendant was leaning in front of her, "kind of straddling her." Scott said that she was concerned because that behavior did not look appropriate. Scott said that, at some point, she filed a report with the school. On cross-examination, Scott testified that she filed the report with Mr. Hill, a teacher, a few days after this incident. Scott agreed that she did not mention in her statement to police that the girl was a cheerleader, and she agreed that she could no longer identify the girl. She also did not tell the detective that this incident occurred at the end of the basketball season in 2004.

Nikki Davis testified that she knew S.E. well and that she also knew the Defendant. Davis testified that another teacher called S.E. out of class on one occasion, and, afterwards, S.E. appeared very nervous.

Brittnye Haley testified that she knew both S.E. and the Defendant. Haley testified that she was good friends with S.E. and had an occasion to spend the night at S.E.'s house on Super

Bowl Sunday in February 2004 or 2005. While spending the night, Haley saw a text message from the Defendant to S.E., asking S.E. what type of position S.E. liked in bed and what the two were going to do together. S.E. responded to the Defendant by asking him what type of position he liked.

Based upon this evidence, the jury convicted the Defendant of one count of sexual battery by an authority figure, acquitting him of four counts of statutory rape and thirteen counts of sexual battery by an authority figure.

## B. Sentencing Hearing

At the sentencing hearing, the following evidence was presented: Ann Fisher testified that she was employed at the Montgomery County Child Advocacy Center as a forensic interviewer. She testified that the number of interviews that her office conducts has increased every year that she has worked at the center. Fisher was unsure how many of those interviews resulted in criminal convictions.

S.E. testified that her relationship with the Defendant lasted from 2004 to 2005, and that she was fifteen and sixteen years old at the time. S.E. said that the relationship caused her to hate her life, made her not want to go to school, go to work, or "hang out" with her friends. S.E. testified that she received good grades, but she missed a lot of days at school because she would beg her mother not to make her go. This aversion to school was related to the Defendant. S.E. testified that she quit the cheerleading squad because she did not want to be around the Defendant. S.E. described herself at this time as "moody" and "depressed" and said she that she withdrew from her friends.

S.E. said that she graduated from high school with honors and that she attended Middle Tennessee State University after graduating. There, she did "horrible," barely passing her first year at school. S.E. said that she was "[j]ust sad" at the time and gained twenty to thirty pounds. S.E. left school after her first semester, and she lost her scholarship. She also had to continue paying rent on the apartment she vacated after the first semester because she had signed a one year lease. S.E. testified that she currently attended Austin Peay State University, and her grades were "decent." She said she has been unable to put this event behind her. She explained that she became afraid when detectives contacted her about this case.

On cross-examination, S.E. agreed that her civil suit against the Defendant was still pending. She also said that she had lost the weight that she previously gained. S.E. agreed that she did not tell the jury at the trial about missing school days but explained that she was not asked questions about that topic. S.E. agreed that she had maintained good grades during the time that she and the Defendant were sexually involved.

The Defendant testified that he was thirty-one years old at the time of sentencing. He said that he was the head basketball coach, the head golf coach, and the assistant baseball coach at Huntland High School from 1999-2002. The Defendant admitted that he had a sexual relationship with a student at Huntland High School but said that she was eighteen when the

relationship started. As a result of this relationship, he resigned from that high school. The Defendant then began teaching at Clarksville Northeast High School, where S.E. was a student. At Clarksville High, he was the assistant boys' basketball coach. The Defendant agreed that the jury found him not guilty of all but one charge, and he maintained that he was not guilty of the one offense for which he was convicted.

The Defendant testified that he was unemployed and was having difficulty finding employment. The Defendant asked the court to expunge his record because that was the only way that he would ever be able to coach again. The Defendant also asked for probation.

On cross-examination, the Defendant agreed that coaches and teachers should be held accountable when they have done something wrong. He said that he had a very supportive family, who had stood by him throughout the trial.

The trial court sentenced the Defendant to a three year sentence after finding the victim's testimony credible and the need to deter further similar conduct:

> The defendant is a range I, standard offender. A class C felony has a range of punishment of 3 to 6 years and carries a possible fine not to exceed $10,000.00.
>
> . . . .
>
> The defendant's amenability to correction and his potential for rehabilitation is questionable given his continued insistence of innocence in the face of his conviction. The defendant's acquittal of other charges may have turned on the credibility of the victim as defense counsel insists but more likely the acquittals turned on the state's struggle to prove that the other conduct was accomplished by the exercise of the defendant's supervisory or disciplinary power. Regardless of the reason for acquittal, for sentencing purposes, this court finds the victim's testimony credible. Moreover, this court finds that some confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses. The court finds that the sentence hereafter imposed is the least severe measure necessary to achieve the purposes for which the sentence is imposed.
>
> After considering the above, the court imposes a three-year sentence with the Department of Correction. Service of the sentence is probated with the exception of 60 days of continuous confinement in the Montgomery County jail. . . .

The Defendant appeals this order of the trial court.

## II. Analysis

On appeal, the Defendant contends that: (1) the evidence is insufficient to sustain his conviction because he did not use his supervisory power over the victim to accomplish a sexual act; and (2) the trial court erred by not granting him full probation.

### A. Sufficiency of the Evidence

The Defendant contends that the evidence is insufficient to sustain his conviction because he did not use his authority over the victim to accomplish a sexual act. The State counters that the testimony demonstrated that the Defendant used his position as a teacher and coach to foster a relationship and ultimately engage in sexual acts with the victim, who was a student. This, the State asserts, is sufficient evidence to support the elements of sexual battery by an authority figure.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e), *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.w.3d 389, 392-93 (Tenn. Crim. App. 1999). A conviction may be based entirely on circumstantial evidence where the facts are "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone." *State v. Smith*, 868 S.W.2d 561, 569 (Tenn. 1993). The jury decides the weight to be given to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (1958)).

In determining the sufficiency of the evidence, this Court will not re-weigh or re-evaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *see also Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*, 493 S.W.2d 474, 479 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary

instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1996) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000). Importantly, the credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the jury as the trier of fact. *Bland*, 958 S.W.2d at 659.

The Defendant in this case was convicted of sexual battery by an authority figure. The Tennessee Code Annotated defines the crime of sexual battery by an authority figure as:

> (a) . . . [U]nlawful sexual contact with a victim by the defendant, or the defendant by a victim, accompanied by the following circumstances:
>
>> (1) [T]he victim was, at the time of the offense, thirteen (13) years of age or older, but less than eighteen (18) years of age, and:
>>
>> . . . .
>>
>> (3)(A) The defendant was at the time of the offense in a position of trust, or had supervisory or disciplinary power over the victim by virtue of the defendant's legal, professional or occupational status and used such power to accomplish the sexual contact. . . .

T.C.A. § 39-13-527(a) (2006). "'Sexual contact' includes the intentional touching of the victim's . . . intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's . . . intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." T.C.A. § 39-13-501(6) (2006). "'Intimate parts' includes the primary genital area, groin, inner thigh, buttock or breast of a human being." T.C.A. § 39-13-501(2) (2006).

The Defendant in this case does not dispute that he had sexual contact with the victim, that he had supervisory or disciplinary power over the victim, or that she was of the age protected by statute; rather, he contends that he did not use this supervisory power to *accomplish* the sexual act between him and the victim. We find the Defendant's argument unpersuasive. The Defendant asserts that the victim testified that the Defendant did not use his supervisory power as a teacher to "*make* her do anything." However, the statute prohibits the Defendant

from "us[ing] such power to *accomplish* the sexual contact"; the statute mentions nothing about using the position to *force* the sexual contact. T.C.A. § 39-13-527(a) (emphasis added). Without a definition provided by the legislature, we turn to the plain meaning of accomplish, which is "1: to bring about (a result) by effort . . . 2: to bring to completion: fulfill." Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/accomplish (last visited July 21, 2008). Thus, if the evidence proved that the Defendant used his position as a teacher or coach to bring about or bring to completion the resulting sexual contact, such evidence is sufficient to support the Defendant's conviction.

The Defendant was convicted of Count 14 of the indictment, which alleged that between January 1, 2005 and March 31, 2005, he "fondl[ed] [S.E.'s] breast." S.E. testified that, in early 2005, she was a student at Clarksville Northeast High School and the Defendant was a coach and a health teacher at the same school. During that time period, specifically in February or March of 2005, the Defendant engaged in sexual intercourse with the victim in his office at school. The evidence sufficiently supports a finding that the Defendant used his authority position to both cultivate an inappropriate relationship with the victim and to accomplish sexual contact with the victim. The Defendant is not entitled to relief on this issue.

### B. Sentencing

The Defendant next contends that the trial court erred when it failed to grant him full probation. He asserts that the only factor used by the trial court as a basis for incarceration was that confinement was necessary to deter others likely to commit similar offenses. He, however, suggests that the evidence at sentencing does not support this factor, and, therefore, the trial court erred by ordering a period of incarceration. The State counters that the trial court based its decision on two factors, that the defendant had a questionable potential for rehabilitation and that there was a need for deterrence. The State asserts that the evidence presented at the sentencing hearing supported both of those findings.

When a defendant challenges the length, range or manner of service of a sentence, this Court must conduct a de novo review of the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d) (2003). As the Sentencing Commission Comments to this section note, the burden is on the appealing party to show that the sentencing is improper. T.C.A. § 40-35-401, Sentencing Comm'n Cmts. This means that, if the trial court followed the statutory sentencing procedure, made findings of facts which are adequately supported in the record, and gave due consideration and proper weight to the factors and principles relevant to sentencing under the 1989 Sentencing Act, T.C.A. § 40-35-103 (2006), we may not disturb the sentence even if a different result was preferred. *State v. Ross*, 49 S.W.3d 833, 847 (Tenn. 2001). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. *State v. Dean*, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); *State v. Butler*, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); *State v. Smith*, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994). Specific to the review of the trial court's finding enhancement and mitigating factors, "the 2005 amendments deleted as grounds for appeal a claim that the trial court did not weigh properly the enhancement

and mitigating factors." *State v. Carter*, 254 S.W.3d 335, 344 (Tenn. 2008). The Tennessee Supreme Court continued, "An appellate court is therefore bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Id.* at 346.

In conducting a de novo review of a sentence, we must consider: (1) any evidence received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing, (4) the arguments of counsel relative to sentencing alternatives, (5) the nature and characteristics of the offense, (6) any mitigating or enhancement factors, (7) any statements made by the defendant on his or her own behalf and (8) the defendant's potential or lack of potential for rehabilitation or treatment. *See* T.C.A. § 40-35-210 (2006); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

To meet the burden of establishing suitability for full probation, a defendant must demonstrate that full probation will subserve the ends of justice and the best interests of both the public and the defendant. *State v. Blackhurst*, 70 S.W.3d 88, 97 (Tenn. 2001). The following criteria, while not controlling the discretion of the sentencing court, shall be accorded weight when deciding the defendant's suitability for full probation: (1) the nature and circumstances of the criminal conduct involved; (2) the defendant's potential or lack of potential for rehabilitation; (3) whether a sentence of full probation would unduly depreciate the seriousness of the offense; and (4) whether a sentence other than full probation would provide and effective deterrent to others likely to commit similar crimes. T.C.A. §§ 40-35-103(1)(B), -103(5), -210(b)(4) (2003); *see also Blackhurst*, 70 S.W.3d at 97.

In the case under submission, the Defendant is eligible for full probation because his sentence is eight years or less (subject to certain statutory exclusions not relevant here). T.C.A. § 40-35-303(a) (2003). Although full probation must be automatically considered by the trial court as a sentencing alternative whenever the defendant is eligible, "the defendant is not automatically entitled to probation as a matter of law." T.C.A. § 40-35-303(b), Sentencing Comm'n Cmts.

The trial court in this case denied the Defendant full probation based upon the defendant's "questionable" amenability to correction and potential for rehabilitation given his continued insistence of innocence in the face of his conviction. Further, the trial court found that some confinement was particularly suited to provide an effective deterrence to others likely to commit similar offenses. The court also concluded that the sentence imposed was the least severe measure necessary to achieve the purposes for which the sentence was imposed.

We conclude that the evidence does not preponderate against the trial court's findings. The Defendant did not demonstrate that full probation would serve the ends of justice and the best interests of both the public and the defendant. *Blackhurst*, 70 S.W.3d at 97. Further, we agree with the trial court that the Defendant has a questionable potential for rehabilitation based on both his denial of guilt and his previous resignation from employment due to an inappropriate relationship with a student. Finally, the trial court did not err when it determined that a sentence

other than full probation would provide an effective deterrent to others likely to commit similar crimes. The Defendant is not entitled to relief on this issue.

### III. Conclusion

We conclude that the Defendant is not entitled to relief because the evidence did support his conviction and the trial court properly sentenced him to a period of incarceration. Based on the foregoing reasoning and authorities, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE